case of this morning, Diaz Almanzar, the Attorney General number 21-3092, Ms. Norton, Mr. Ansoulis, if I'm pronouncing that correctly, and I think we have on video Ms. Lee, is that correct? Thank you. Whenever you're ready. Good morning, Your Honors. May it please the Court, Stephanie Norton of the Seton Court of the Petitioner, Luis Diaz Almanzar. May I reserve three minutes of my time for rebuttal? You certainly can. Your Honors, the central issue in this case is whether, at the time of Mr. Diaz Almanzar's conviction, New Jersey second-degree robbery was categorically a crime involving moral turpitude. I'll be addressing this issue, and then my co-counsel will speak to our alternative constitutional argument in the case. We submit that New Jersey second-degree robbery was not categorically a crime involving moral turpitude at the time of Mr. Diaz Almanzar's conviction, because the minimum conduct criminalized... I'm not making any argument about the second-degree robbery statute post-2016, correct? That's correct, Your Honor. There's no reason we should opine or touch that. I agree, Your Honor. Simply, at the time of Mr. Diaz Almanzar's conviction in 2015, there's no dispute that either the theft element of the second-degree robbery statute or any of the other potential aggravating circumstances elements categorically involved moral turpitude. Now, what I think is interesting about your argument is you basically set the theft aside, and you say, okay, the precedent at the time said that wasn't enough. But you're treating moral turpitude like it's on-off light switch. It's either zero or one. It's binary. But why can't we conceive of this as a spectrum? Maybe we'll find that it's turpitudinous. What an awful word. Post-2016, maybe we could say it was .95 of turpitude as of 2015. So isn't it relevant, if it's at least close to the line, that it wouldn't take very much to push it over the line? Well, under the categorical approach, Your Honor, the question is whether the least culpable conduct under the statute rises to the level of moral turpitude. But you say very little about theft. You say very little about the theft part of it, right? Because, you know, all the cases that went your way were based on this kind of joyriding, right? But this is a nearly permanent taking isn't really in the joyriding classification. And so maybe it's not under that precedent quite 100% of turpitude, but it could still be a pretty bad thing to take something for long term. Well, just looking at the New Jersey theft statute itself, it covers intent to withhold the property until its value depreciates, intent to withhold it pending payment of compensation, and intent to dispose of it until its rightful owner is unlikely to recover it. So I think particularly when you're looking at this intent to withhold it pending payment of compensation, that could be a momentary deprivation of someone's property rights. And that clearly doesn't match the intent to permanently deprive someone of their property. Wait a minute. It says for so extended a period. That implies that it's not momentary. Does that language apply to the pending payment of compensation? I'm looking at the definition of deprive. I'm sorry. Where are you? I'm going to get the lumber. Yes. And who needs the definition of deprive? I was looking at 2C20-1A. One moment. Yes. So yes, one says to withhold or cause to be withheld property of another permanently or for so extended a period as to appropriate a substantial portion of its value or with purpose to restore only upon payment of reward or other compensation. So the or with purpose to restore only upon payment of reward or other compensation could conceivably involve only a temporary deprivation. And I would also just note that this definition of deprive is actually almost the same as the definition that the BIA was considering in a matter of Diaz-Lizarraga. And the BIA in that case acknowledged that this would not meet its previous permanent deprivation standard, that because it would cover a temporary deprivation. And then the BIA essentially updated or changed its standard to cover any substantial deprivation of property. Can you talk to us about the aggravating circumstances, in particular with A1? Why isn't force to rest away when we have case law that says that that needs to be done violently enough to be a categorical match? Because the BIA has made clear that knowingly using force when you have no intent to cause injury and when the force used is de minimis, it can involve merely offensive touching. No injury whatsoever is required. That that simply doesn't rise to the level of a reprehensible act committed with a meaningful level of intent. And that's clearly decided by the BIA in matter of Solon. I realize here we don't apply the modified categorical test, or at least it doesn't appear that we would. We simply go with the categorical test. But what actually happened here that he was found guilty to? Your Honor, that's actually not clear, I believe, from the from the record. The government has not submitted documents that would clarify under which subsection of the statute. Mr. Diaz almost pled guilty. What was what was the act that caused the government to come prosecute? I believe the act was Mr. Diaz and two others conspired to commit a robbery. And at some point during that time, a gun was fired, unclear by whom. And so Mr. Diaz was charged first with attempt to commit first degree robbery and then second with conspiracy to commit second degree robbery. And that is what he pled guilty to, conspiracy to commit second degree robbery. But it's it's just unclear from the indictment and from the plea agreement under which subsection of that second degree robbery he pled guilty. The question I don't think you gave me this. That recitation section you were quoting from about the temporary withholding. Which subsection are you finding that in? I believe this is to see 21 a and then subsection one. So in terms of which would apply and an application of a modified categorical approach, the government has requested and continues to request a remand, presumably to put forward additional shepherd type documents where there's not a clear answer. As your your answer indicates, why not remand? Because the Supreme Court in Descompte and this court in Hillux has made clear that the modified categorical approach need only apply when one possible division of the statute includes morally turpitude and misconduct. And here, regardless of which subsection Mr. Diaz Almanzar was convicted under, none of them require morally turpitude and misconduct. So it would be a fool's errand to to even bother assessing which one he was convicted under because none of them could be a crime involving moral turpitude. But again, you are conceptualizing this as binary. Is there do you have authority for this, that if A isn't turpitude and B isn't turpitude, is that A plus B necessarily can't be turpitude? The BIA, in both matter of short and matter of torus virila, has said that two non-morally turpitudinous crimes cannot, through some undefined synergism, become a crime involving moral turpitude. Have we said that? Have other courts of appeals said that? Or is that just the BIA? Well, the the Ninth Circuit, in assessing a robbery statute very similar to this one, came to in the Barbosa case. Which case? Barbosa. Okay, Barbosa. Yes, it's a... I've got it. Okay. And they analyzed the Oregon robbery statute the same way that we're urging this court to analyze the New Jersey robbery statute. They said there's a theft element and then there's a use of force element. The theft element, pre-Diaz-Lizarraga, only involves temporary taking. The use of force element only involves de minimis use of force. And so under the categorical approach, which requires looking at those two elements, there's simply no... At no point in time is there a reprehensible act committed with an appreciable level of consciousness. So for that reason, that statute and this statute are not crimes involving moral turpitude. The approach that the court seemed to be taking in Barbosa was largely comparing the statute in front of them to others that it had already considered to be crimes of moral turpitude. Are you referring to the Mendoza case with the California robbery statute or simply other board of immigration appeals cases? Other board cases that it was comparing the Oregon statute to. If we were to take an approach like that, why wouldn't we sort of do a general comparison to things like Pennsylvania's retail theft statute, which we've held to be a crime of moral turpitude? Because the categorical approach requires that you look at the individual statute at issue here. And with respect to the Pennsylvania theft statute, I assume that that's a crime involving moral turpitude because there was this intent to permanently deprive in the inherent in the theft element of that statute. Here, you don't have the same intent to permanently deprive. And if you look at BIA case law about the aggravating circumstances elements in particular, they very clearly answer the question that none of those elements rises to the level of a crime involving moral turpitude. Let's go back to force for a second, because you said force with offensive touching might be enough. But in Solon that you pointed us to, there's there's discussion of harm simply being that the intentional conduct resulting in a meaningful level of harm. Yes, here the New Jersey Supreme Court has made clear that no harm is required under the robbery statute, no injury of any kind. It's simply the amount of force to push someone aside after a theft or to rest an object from someone's hand. There's no injury or harm required. And so that distinguishes this case from the discussion and so on. So if there are no other questions, we urge the court to reverse the BIA's decision in this case and find that Mr. Diaz was not convicted of a crime involving moral turpitude. Thank you very much. We'll hear from Mr. Ansoulis. Good morning, Your Honors. May it please the court, Michael Ansoulis, also at the Seton Hall Law School Center for Social Justice, on behalf of Petitioner. Thank you very much for permitting my co-counsel and I to split our time. Your Honors, we respectfully submit that if this court were tempted to find New Jersey Statute 2C-15-1 to be a CIMT, because of BIA opinions with stray language to that effect, such a decision would render the INA's use of the phrase, crime involving moral turpitude, to be unconstitutionally vague as applied to Petitioner, or at the very least raise serious vagueness concerns. And that's because, first, those cases relied on by the government pre- Back in, I guess, 2004 or so, we said that a crime involving moral turpitude is one that necessarily involves conduct that is inherently based filed or depraved, contrary to the accepted rules of morality and the duties owed other persons. In this case, how would what was done not be against the rules of the community as to how we should relate to other persons? Understood, Your Honor. So the BIA, even reflecting upon that standard that you mentioned, the inherently based, filed, depraved standard, has still described the phrase, crime involving moral turpitude, as nebulous. And the categorical approach is really the solution to trying to apply that kind of qualitative standard. So we would submit that the application of the categorical approach in the way that my co-counsel described would limit it. Even if you're right, isn't it against the community mores to commit a robbery? Again, Your Honor, while it may or may not be in a kind of general sense, the courts are required under the categorical approach to still assess the least culpable conduct of each of the elements and then make a determination on that. That's the merits that your co-counsel has talked about. You're talking about vagueness here. That's right. I mean, there could be a case, obviously, where one can make, and we've got pretty esteemed judges saying that they don't quite understand what crime involving moral turpitude should mean, or what turpitude-ness, whatever that is, should mean. But there's easy cases and there's tough cases. Yes. This doesn't seem to come real close to the line. Your Honor, we submit that it does come real close to the line, and I'll explain. A robbery comes close. Okay. Yes, I'd love to explain. Should we be doing this on an as-applied basis? Your client being involved in a robbery and firing a gun is not exactly the person enough standing to say that he lacked fair notice. Yeah, that's where I'm heading. Sure. So I think to get to both of your questions, we first have to look back at Jordan and the first time that this statute was challenged before the Supreme Court, and we submit that Jordan really did two things. First, it said there are clear cases. Fraud is one of them. It added it to that basket. And then it said there's a gray zone, but we might not have to worry. Actually, it didn't say we might not. It said we don't have to worry about the gray zone. The language it said is the adequacy of a standard in less obvious cases does not render that standard unconstitutional. However, the Supreme Court in 2015 in Johnson v. United States emphatically rejected that argument, and, in fact, it was suggested in a currently pending petition before the Supreme Court of the United States asking the court to overrule Jordan that Johnson implicitly overruled that concept that the gray zone doesn't matter when it said our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. So we submit that this is an edge case because an application of the categorical approach, which the petitioner was on notice conceivably at the time that he pled guilty that the theft portion of his statute is not going to be found morally turpitude, and it's because of the pre-Diaz-Zuraga standard. And then he was also on notice based on Solon for subsection one of the aggravating circumstances, based on JPG for subsection two of the aggravating circumstances, and based on the fact that there are numerous first- and second-degree crimes which have been adjudicated. But that sounds like, again, you're arguing the merits here. I thought your portion of the argument is that crime involving moral turpitude is so vague that we just don't understand it. That's right. And so it's unconstitutional, and they need to go back to the drawing board. Well, that gets to the as-applied, like a quality of our argument. We're not making a facial argument, so we're saying as-applied here. Petitioner was actually on notice that the categorical approach would apply to him, and that's why the BIA cases proposed by the government don't provide those. So you put the categorical approach into a vagueness argument. The categorical approach is the operating law. The categorical approach is already too broad, and we should expand it further. No, no. I'm not suggesting that there's anything wrong with the categorical approach whatsoever. I'm suggesting that the categorical approach was the law at the time Petitioner pleaded guilty, so he was not on notice that there would be some kind of a novel treatment. He was not on notice. He's like, does he read law books in his spare time? I think the treatment of notice in vagueness inquiries is somewhat of a legal fiction. It's a question of what the law is at that particular time. I don't think it's treated as actual notice. Would he have been the least surprised to find out that pulling a robbery and pulling a gun would get him deported? The facts are not clear that our client pulled a gun. Okay, one of his buddies pulled a gun. Sorry, could you please repeat the question? Would he have been the least surprised to pull a robbery, have a buddy of his pull and fire a gun, and to discover that he might be deportable as a result? I think, Your Honor, that that really skips over the analysis and it kind of evades the question of why the law combined with the mandatory categorical approach would create vagueness for him as applied science. The point is that you're building a legal fiction on top of a legal fiction. I think what notice is doing here is kind of constraining the discretion of certain enforcers. But then we don't need to be asking whether it's unclear to him. We have to ask whether a reasonable person, you know, inside, you know, IJ or BIA, et cetera, you know, is the government not reasonably being constrained? Is it really arbitrary whether they're choosing to kick certain people out or not? Like that level notice makes some sense if you're applying that to the enforcer's discretion. Right. So, in fact, it's not only a notice problem. We submit that there is an arbitrary enforcement problem. And this goes back to your question to my co-counsel about whether it's a spectrum, whether you're a .95 or something, right? Let's just assume for this moment that it's settled that neither the theft nor the least culpable conduct. And then the question is, is there some kind of combination there that could bring you over the threshold? That does raise arbitrary enforcement issues because suppose you're the IJ or any reviewing court, for that matter, and you're assessing a statute like this one, you look at the first element, you say, oh, there's no necessarily morally turpitude misconduct here. You look at the second element, you say, oh, there's no necessarily morally turpitude misconduct here. Then the judge has to make a discretionary leap in his or her judgment. Well, do the two elements here combine in some kind of particularly terrible way to bring you over the threshold? And I would just turn your attention back to a matter of short. The co-counsel quoted the undefined synergism language, but just following that sentence at 139, it says, there must be some particular criminal activity with which we evaluate whether the nature of that activity involves moral turpitude. So we submit that because the categorical approach is the law, once a judge has exhausted all of the particular criminal activity that's required to reach a conviction for a statute, there is a discretionary leap there that a judge must take. Let's just stay on categorical then, follow your line. Yep. Isn't a robbery categorically something that's against the morality of the community? No, Your Honor, because the BIA found in those robbery cases, well, actually, in the BIA cases put forward by the government, I'm sure that's what you're also supporting. You're saying it's okay? I don't think so. Again, don't mix us with the merits. Sure. We're talking about vagueness here. Yes. Is a robbery so vague that it's unconstitutional when you're assessing the words crime of involving moral turpitude? I understand your question, Your Honor, being about robbery as a general concept, and I only submit that. But you're dealing with that, and as applied to this case, is robbery so vague that this person would not understand that it's against the mores of the community, so much so that it can be called a crime of involving moral turpitude? I don't know how to answer your question, Your Honor, because I don't believe the question is robbery vague. The question is, is the application of the phrase crime involving moral turpitude as applied to New Jersey Statute 2C-15-1 vague? And we submit that it is. And I don't necessarily think that my response is going to the merits of the case, because if you look at the robbery cases that the government puts forward, each one of those robbery cases reached its conclusion based on the traditional – there's two arguments. One, that categorically speaking, this particular crime doesn't fit the second-degree crime, and that's the argument made by your co-counsel. You're taking on the vagueness challenge, an entirely separate issue. Forget that. Crime involving moral turpitude is so un-understandable and so vague, it just – it can't be used in this immigration context. That sounds more like a facial challenge. The as-applied challenge would be if we were to lose on any of my co-counsel's grounds, then it would be – Let's go from the facial to robbery. That's right. We're not making a facial challenge, though. I just want to clarify that. Okay. Let's just say robbery. And I'm not understanding how a robbery is so not understood to be either depraved or against the morality of the community, and you keep coming back to bringing in the merits of this particular argument that your co-counsel makes. Sure. Skip – that is a separate argument you made in your brief. I understand. Particularly in answering this, I mean, this is particularly pre-Diaz-Lazarada, because if you have in there the intent to permanently deprive, is that clear on its face that it's got that element of being so vile and depraved just to meet the standard? Your Honor, I think we are – both Your Honors, I think we're circling around the main issue, which is isn't theft generally against the depraved, or isn't whatever – insert crime here. And I think the problem is that that qualitative standard, the inherently base vile depraved, it kind of sounds like any crime – in fact, that's why it's a crime. That's how you criminalize. No, theft plus one of three things can get you a robbery. And that's why – So we're talking about robbery, assuming for the moment that one of those three things is met, although your co-counsel has given plausible arguments why it's not. You're dealing with another issue. So assume it's theft plus one of those three aggravating factors is met. Are you telling us that putting that under the rubric of crime involving moral turpitude can't be done because a robbery isn't so depraved or against the mores of a community that you simply cannot consider it to be on notice to the person committing the robbery that he has done something that could get him deported? Just before I answer your question, Your Honor, when you say is met, do you mean is met to secure the conviction or is met in a morally turpitudinous way? I'm saying that you have theft and one of the three aggravating factors is met. We now have, quote, robbery. And are you telling us that that as applied to that crime involving moral turpitude cannot be understood by an individual, that he is doing something braved against the morality of the community, whatever it might be, vile? That's not the society we're in. In a general sense, sure, a petitioner may know that, may consider that. I submit only that that qualitative definition could conceivably apply to any crime, which is why it's criminalized. And I submit that that definition really doesn't add much clarity here because that's not how an immigration court or any reviewing court would analyze it. The categorical approach was adopted specifically to avoid these generic concepts. Which is the argument your co-counsel is making. It's almost like you made this argument as a, whatever, a fallback perhaps or just an add-on. Isn't the main argument the one that your co-counsel is making? Yes, the main argument is the one that my co-counsel is making. Our constitutional challenge is really. So your client could win based on that. Absolutely. And the vagueness argument is one that is maybe you just want to put away for another day? No, Your Honor. We submit that, well, certainly my co-counsel could win and that would be the end of the story. You would like winning, wouldn't you? Absolutely. And that's why I wanted to add that really as a matter of constitutional avoidance, this court should resolve any doubt about this gray zone by finding it my co-counsel's favor. And we simply are trying to distinguish ourselves from Jordan and from Moreno and even Bugarenco and Third Circuit cases where they were clearly in that heartland from Jordan. We think that because the analysis under the categorical approach is clear that we're not a CIMT. If we were somehow to be found to be a CIMT, we'd be on the far periphery of that gray zone. The law has changed since Jordan because of Johnson, showing that that gray zone is perhaps fair game for a court to consider. And thus, it would be far easier for this court to simply agree with my co-counsel. I agree with you. I think we're beating a dead horse. But why don't we hear from Ms. Lee then? Thank you very much. Thank you. Whenever you're ready, Ms. Lee. Good morning, Your Honors. May it please the Court, Sena Lee representing the Attorney General. Your Honors, first, the government would admit that this case would be remanded to the Board in the first instance to consider all of the elements of the New Jersey robbery statute. The Board did determine that this statute was categorically a crime involving moral servitude, but the government would like the Board to have a chance to specifically address all of the elements in the statute. Okay. I take it you didn't argue that the theft element of the statute requires turpitude, right? No, Your Honor. We did not argue that. I think your brief acknowledges that you found that there are several New Jersey cases that say that or that we have found that several New Jersey second-degree cases do not require turpitude. Is that correct? The third aggravating factor, in other words, is not in play. So it looks like, if I'm correct, that your argument rests on either the first or the second aggravating factor. Well, Your Honor, I think it's possible that a condition under the third aggravating factor could constitute a crime involving moral turpitude, although we would like the Board to have the chance to decide that in the first instance. But as to that third section... Is your primary aggravating factor either the first or the second one, or you're now telling us you want us to go back and revisit the third one? Well, in response to the Court's order to address this issue, the government believes that a conviction under all three of the sections would categorically involve moral turpitude. Now, you just answered, Judge Ember, that you've not argued the theft element here. You also have not argued a synergy of the theft element with the others. Your case hangs on whether one, two, three, or all three of them bring the turpitude into the case, right? Right, Your Honor. We are not arguing that the theft alone has the turpitude in this element. But the theft plus the aggravating element in each of the subsections would bring the crime into the scope of turpitude in this conduct. How can that be for the third factor where it involves any crime? Any crime? Well, the third factor is a first- or a second-degree crime, so those would be serious crimes. And the legislative history of the New Jersey statute says that the intent was to keep the traditional notion of robbery in the statute. But it did want to broaden that notion some to include criminals who will be willing to use force against possibly like a security guard or a police officer who is trying to apprehend that criminal in the immediate flight from the theft. So the focus of the New Jersey legislature was on the criminal conduct. But the least culpable conduct can include things like placing a wager on official action. How would that, if we're going to look at the least culpable conduct, taking a categorical approach, how would that match up? Well, Your Honor, there is some case law in New Jersey that states that the elements of robbery must include intimidating or assaultive conduct. That sounds like you're talking about the first aggravating factor or threats of that type of conduct in the second. Right. That would include those first two subsections. But the Lopez case out of New Jersey says that even the third subsection would have to include intimidating or assaultive conduct. And that seems to reflect the New Jersey legislature's intent to limit the subsection three to more of the traditional notion of robbery, which would be the theft plus this force or threat. So it seems that. Let's just take the first aggravating factor, which is inflicts bodily injury or uses force upon another. New Jersey has a case called Simmons in which pushing a cashier is sufficient use of force under that statute. And that appears to be well below a level that would be considered to be trepidatious. Well, I think if you consider just that act on its own, that could be the case. But here we've got the theft plus the use of force, which we're stuck with the categorical approach. It's and it looks like New Jersey, New Jersey cases say that there's something less than what we would normally consider to be moral turpitude. The type of use of force that would fit in under the second degree robbery here, but not fit under what is a crime involving more turpitude. So that factor appears to be out for use by you simply because we're dealing with a theoretical categorical approach. Am I am I wrong in what I just said? Well, your honor, I mean, using the categorical approach. You know, we I don't think that we need to separate the theft from the use of force. You're not you're not arguing that if we've got to two components here, neither of which is sufficient on its own, that together they're greater than the sum of their parts. Are you? Well, I believe that we're we're arguing that if you look at all the conduct together, your honor. So, you know, you've got the theft, which is generally. But recently, but you don't you haven't argued that the theft element requires turpitude. Right. We just talked about that a little bit ago. Right. Right. Your honor, the theft is not turpitudinous. And the first aggravating factor, because it includes things like pushing a clerk, is not categorically turpitudinous. Then you're not arguing putting them together somehow makes it turpitudinous. Are you? Well, your honor, we we are arguing that all of those acts combined is turpitudinous. So you are arguing that if you take two different components, neither of which is turpitudinous, that you can put them together and it becomes turpitudinous. Is that the government's position? Well, your honor, the government's position is that robbery has always or for many years has been considered turpitudinous. Well, we can talk about that in a second. I want to understand, because this would be different than other case law that's out there. So I'm wondering if you're saying that we can combine two non turpitudinous components and it then becomes turpitudinous. I am interested in what authority you're relying on for that. Well, the board has in at least another case that I cited to in our supplemental briefs. I didn't see this in your briefing. This seems to be new. Where did you preserve this theory? Well, the. I mean, the board in Ray Fernando Torres rejected that position. Do you have a different authority from the board that you're relying on? I'm sorry. Just one second so I can find the name of the case. It had to do with. An aggravated DUI. Sorry, I'm trying to find a case. So in that case. There was. Why? Generally not considered to the genius, but the fact. The noncitizen drove and committed the DUI when he knew that his license was suspended. In that case, the board determined that. Knowing that his license was suspended, turned his crime into a turpitude in this crime. So that approach is something similar to what we are suggesting in this case. So that one would was called matter of Lopez Mesa. And in that case, the board said that the finding of moral turpitude in the crime is not simply arise. Separate offenses, rather, it results from a building together of elements by which the criminalized. Deviates further and further from the private and social duties that persons owe to one another and just to society. And so. In this case, we think that. We could apply that approach to crime. Where you do have the best. And on top of that, you have it. The criminal attempting or I'm sorry, committing or threatening to commit another crime, which would. By the danger of that situation and cause fear and in the. So, Miss Lee, I finally located it. You didn't mention it, but supplemental brief page eight. You have this theory in a parenthetical. Now, we have case law that says sticking something into a footnote isn't sufficient to preserve it. Is just quoting this parenthetical sufficient to preserve the synergy theory? Why should we treat that as on the table here? If it's the first time you raise this in a parenthetical, now you're developing it an oral argument. Well, Your Honor. Well. Yes, we would like to preserve that theory, but. Ideally, we would prefer that the board be able to address that in the first instance. But even if. Why would why would we even need a remand? Well, Your Honor, the categorical approach essentially takes you off on a. On legal theory. And you don't deal with the modified categorical approach to get you into the facts and circumstances of what happened. In connection with the statutes that it is divisible. But. Well, if if the court does remand this case, the government, the Department of Homeland Security. Has a piece of documents that could shed more light on which category that. If we're if we're if we're dealing with the categorical approach and we're dealing with legal issues. And serious, the Supreme Court has told us we need to do. What is the need for a remand? Well, Your Honor, the board does have the expertise. To to decide issues regarding. That is. That is in the Immigration and Nationality Act. And so we believe they should be. But the question here is their conduct in this statute. As interpreted by the New Jersey courts, that could be less than what is considered to be something involving. Turpitude. In other words, something that isn't so depraved or vile that it would be. Considered not turpitude in this. Yes, Your Honor, I, I do think that's a tough question and it's it's. Hard to know exactly what. What the courts would would convict someone under subsection three for. But based on the legislative intent and also the the case law that I mentioned earlier from New Jersey, it seems that the New Jersey courts would limit. A conviction under. All of these subsections to be to include an intimidative or assaultive conduct. All right. Any further questions? Why don't we hear back from Ms. Norton? Can I just ask, are you asking for us to decide or were you asking primarily for a remand? We would like you to decide, Your Honor. We think a remand is unnecessary in this case. That was actually the first point I was going to make on rebuttal. The BIA has already had two opportunities to decide this issue, and it's decided it incorrectly both times. The court doesn't owe any deference to the BIA's unpublished single member decision. And it's reviewing this purely legal issue de novo. Nothing about the facts of the law have changed since the last time the BIA decided the case. And even if the case were remanded, there's just really no way that the BIA could reasonably reach a different outcome, given its existing precedent and the result of a clear application of the categorical approach. Ms. Lee acknowledged that the government concedes that the theft element of the New Jersey Robbery Statute does not require moral turpitude. And she doesn't offer any viable reason why either of the three aggravating circumstances necessarily involve turpitude misconduct either. With respect to the third subsection, she suggests that the legislative intent was that any other crime committed involved intimidating or assaultive conduct. First of all, that's not what the clear language of the statute says. Second of all, the BIA has made clear that intimidating and assaultive conduct is not necessarily sufficient to be a CIMT. So that is essentially irrelevant. And with respect to the synergy argument, which the government only raised for the very first time on a supplemental brief, the BIA has made clear, as Judge Krause said, that two non-turpitudinous actions cannot be greater than the sum of their parts. It's explicitly rejected that. Otherwise... So Lopez Meza is distinguishable from this case, and the board later cabined the decision in Lopez Meza in Torres Varela. So in Lopez Meza, the two elements of the aggravated DUI statute both involved the underlying conduct of driving. So the court basically said drunk driving while knowing that you shouldn't be driving is a reprehensible act committed with an appreciable level of consciousness. And that has always been held to be a CIMT. Whereas in Torres Varela, it looked at a recidivist DUI statute, and it said, if you've been convicted of three DUIs, we can't aggregate those three non-morally turpitudinous acts and find that you've been convicted of a CIMT. But that's on a recidivism ground, which is a little different from an act being done at the same time. I mean, there's a difference between breaking and entering and burglary, right? And it's long been understood that burglary is a lot worse than just breaking and entering. So at some point, you add elements, you add elements, and you get across that line. But even in the burglary context, the BIA has, or even the Supreme Court, has never suggested that breaking and entering plus intent to commit any crime therein should somehow be aggregated to create a CIMT. It's looked at the breaking and entering element, and it's looked at intent to commit any crime therein. And it said, if you didn't intend to commit a CIMT after breaking and entering, then burglary is not a crime involving moral turpitude. And it's never suggested that you can synergize those two very separate actions. So similarly with robbery, you can have a temporary theft from one person, and then you can bump into or push aside someone else on your way out the door. Neither of those acts is a reprehensible act committed with an appreciable level of consciousness. So you can't somehow magically combine them to create a crime involving moral turpitude. And I guess I'm out of time. I wanted to briefly clarify our constitutional argument in the case. Go right ahead. Just to make clear that we feel that the court does not need to get to this issue if it agrees with the first argument that second degree robbery is not a CIMT. Understood. Thank you, Your Honor. Thank you. Thank you to all counsel. I want to thank the Seton Hall Human Rights Clinic. Ms. Norton, are you a professor at Seton Hall, or is it with a law firm? I'm a senior practitioner in residence, sort of like a senior staff attorney. So I work on my own cases, and I supervise some students on the case. And then Mr. Ansel is your student at Seton Hall? Yes. Okay. Thank you very much for taking this case on. It's much appreciated.